## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW WHITFIELD, | : |
|     Plaintiff, | : Case No. _____ |
| v. | : JURY TRIAL DEMANDED |
| TEGNA INC., HOWARD D. ELIAS, DAVE LOUGEE, GINA L. BIANCHINI, STUART J. EPSTEIN, LIDIA FONSECA, KAREN H. GRIMES, SCOTT K. MCCUNE, HENRY W. MCGEE, SUSAN NESS, BRUCE P. NOLOP, NEAL SHAPIRO, and MELINDA C. WITMER, | : COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934 |
|     Defendants. | : |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

### NATURE OF ACTION

1. On February 22, 2022, TEGNA Inc. ("TEGNA" or the "Company") entered into an agreement and plan of merger (the "Merger Agreement") to be acquired by Teton Parent Corp. ("Parent"), Teton Merger Corp. ("Merger Sub"), and other subsidiaries of Parent (the "Proposed Merger").

2. Under the terms of the Merger Agreement, TEGNA's stockholders will receive $24.00 in cash per share.

3. On March 25, 2022, defendants filed a proxy statement (the "Proxy") with the U.S. Securities and Exchange Commission (the "SEC").

4.      As alleged herein, the Proxy fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 15 U.S.C. § 78aa because the Proxy, which plaintiff alleges to be materially false and misleading, was transmitted by defendants into this District, including to plaintiff, who resides in this District.  *See, e.g., Wojtunik v. Kealy*, 2003 WL 22006240, at *5-6 (E.D. Pa. Aug. 26, 2003).

## THE PARTIES

8.      Plaintiff is and has been continuously throughout all relevant times the owner of TEGNA common stock.  Plaintiff resides in this District.

9.      Defendant TEGNA is a Delaware corporation.  TEGNA's common stock is traded on the New York Stock Exchange under the ticker symbol "TGNA."

10.     Defendant Howard D. Elias is Chairman of the Board of Directors of TEGNA (the "Board").

11.     Defendant Dave Lougee is Chief Executive Officer and a member of the Board.

12. Defendant Gina L. Bianchini is a member of the Board.

13. Defendant Stuart J. Epstein is a member of the Board.

14. Defendant Lidia Fonseca is a member of the Board.

15. Defendant Karen H. Grimes is a member of the Board.

16. Defendant Scott K. McCune is a member of the Board.

17. Defendant Henry W. McGee is a member of the Board.

18. Defendant Susan Ness is a member of the Board.

19. Defendant Bruce P. Nolop is a member of the Board.

20. Defendant Neal Shapiro is a member of the Board.

21. Defendant Melinda C. Witmer is a member of the Board.

22. Defendants identified in ¶¶ 10-21 are referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

23. TEGNA is a media company with sixty-four television stations in fifty-one U.S. markets.

24. On February 22, 2022, TEGNA entered into the Merger Agreement.

25. The press release announcing the Proposed Merger provides as follows:

TEGNA Inc. (NYSE: TGNA) and Standard General L.P. today announced that TEGNA and an affiliate of Standard General have entered into a definitive agreement under which TEGNA will be acquired by the Standard General affiliate for $24.00 per share in cash. The transaction has an equity value of approximately $5.4 billion and an enterprise value of approximately $8.6 billion, including the assumption of debt.

The transaction consideration represents a premium of approximately 39% to TEGNA's unaffected closing share price on September 14, 2021, the last full trading day prior to media speculation about a potential sale of TEGNA, and a premium of approximately 11% to TEGNA's all-time high closing price since separation from the Gannett publishing business in 2015. The transaction was unanimously approved by the TEGNA Board.

Howard D. Elias, Chairman of the TEGNA Board, said, "We are pleased to have reached this agreement with Standard General, which follows a thorough review of acquisition proposals received by the Company. After evaluating this opportunity against TEGNA's standalone prospects and other strategic alternatives, our Board concluded that this transaction maximizes value for TEGNA shareholders. Thanks to the team's stellar execution of the Company's value-creation strategy, TEGNA has positioned itself as a leading broadcast television group serving the greater good of the communities in which we operate – and as a private company will have an enhanced ability to keep evolving its local news, programming, and marketing solutions to serve its communities in a rapidly changing media landscape."

Soo Kim, Founding Partner of Standard General, commented, "As long-term investors in the television broadcasting industry, we have a deep admiration for TEGNA and the stations it operates and, in particular, for TEGNA's talented employees and their commitment to serving their communities. We are excited to partner again with Deb McDermott, who previously spearheaded the broadcast group at Media General, where Standard General was a principal shareholder. We believe TEGNA has a strong foundation and exciting prospects for continued growth as a result of the stewardship of the Board and the current management team. We look forward to building on the Company's strong foundation and leveraging Deb's deep industry experience to drive further growth."

Following the close of the transaction, Deb McDermott will become CEO and Mr. Kim will serve as Chairman of a new Board. Ms. McDermott currently serves as CEO of Standard Media and has more than 20 years of experience leading broadcast groups, including previously serving as COO of Media General and as CEO and President of Young Broadcasting. In these roles, she has served as a key member of the leadership teams responsible for the successful acquisition, integration, and operation of more than 90 stations.

Dave Lougee, President and CEO of TEGNA, said, "This transaction is the next step in TEGNA's evolution and recognizes the value of our portfolio of leading broadcast assets and innovative digital brands. TEGNA's employees deserve tremendous credit for their commitment to serving our viewers with high-quality news and content that informs and supports our local communities. At all levels, we have been tireless in our efforts to ensure TEGNA effectively serves all of our stakeholders, and I am immensely proud of these efforts. Our hard work has built a company that is a leading and trusted local news and media content provider in the markets it serves and has fostered a culture of diversity and inclusiveness. We are deeply gratified that TEGNA's new owners value and embrace our purpose to serve the greater good of our communities. Deb McDermott is an experienced and accomplished broadcast executive, and we are confident in TEGNA's future under her leadership."

Ms. McDermott commented, "I am honored to lead TEGNA's team to create new opportunities and build on its heritage and successes achieved under Dave's leadership. TEGNA's stations have earned excellent reputations as leading local

content providers, and TEGNA's digital and content assets are a key part of its future in an evolving media landscape. These achievements are a credit to the hard work of TEGNA's dedicated employees, who are the Company's most valuable asset. I'm very excited about what the future holds for TEGNA."

**Transaction Details**

The transaction is subject to approval by TEGNA shareholders, regulatory approvals, and other customary closing conditions, and is expected to close in the second half of 2022.

Under the terms of the definitive merger agreement, in addition to receiving $24.00 per share, TEGNA shareholders will receive additional cash consideration in the form of a "ticking fee" of $0.00167 per share per day (or $0.05 per month) if the closing occurs between the 9- and 12-month anniversary of signing, increasing to $0.0025 per share per day (or $0.075 per month) if the closing occurs between the 12- and 13-month anniversary of signing, $0.00333 per share per day (or $0.10 per month) if the closing occurs between the 13- and 14-month anniversary of signing, and $0.00417 per share per day (or $0.125 per month) if the closing occurs between the 14- and 15-month anniversary of signing.

Following the close of the transaction, TEGNA stations in Austin (KVUE), Dallas (WFAA and KMPX) and Houston (KHOU and KTBU) are expected to be acquired by Cox Media Group ("CMG") from Standard General.

Also after closing, Premion is expected to operate as a standalone business majority owned by Cox Media Group and Standard General.

Upon completion of the transaction, TEGNA will become a private company and its shares will no longer be traded on the New York Stock Exchange.

**Financing**

An affiliate of Standard General will hold substantially all of the voting, common equity in the new entity that is acquiring TEGNA, with CMG and funds managed by affiliates of Apollo Global Management to hold securities in the new entity that will be non-voting and non-attributable and with other investors holding non-voting interests. A syndicate of banks led by RBC Capital Markets will provide debt financing.

**Advisors**

J.P. Morgan Securities LLC is acting as lead financial advisor, with Greenhill & Co. also acting as a financial advisor to TEGNA, and Wachtell Lipton Rosen & Katz and Covington & Burling LLP are acting as its legal advisors. Moelis & Company and RBC are acting as financial advisor to Standard General and Fried Frank Harris Shriver & Jacobson LLP and Pillsbury Winthrop Shaw Pittman LLP are acting as its legal advisors.

26. On March 25, 2022, defendants filed the Proxy, which fails to disclose material information regarding the Proposed Merger.

Financial Projections

27. The Proxy fails to disclose material information regarding TEGNA's financial projections, specifically: the line items underlying the projections.

28. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

Financial Analyses

29. The Proxy fails to disclose material information regarding the financial analyses conducted by J.P. Morgan Securities LLC ("J.P. Morgan") and Greenhill & Co. ("Greenhill"). When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion and the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

30. Regarding J.P. Morgan's Public Trading Multiples analysis, the Proxy fails to disclose the individual multiples for the companies utilized by J.P. Morgan.

31. Regarding J.P. Morgan's Selected Transaction Analysis, the Proxy fails to disclose the individual multiples for the transactions utilized by J.P. Morgan.

32. Regarding J.P. Morgan's Discounted Cash Flow Analysis, the Proxy fails to disclose: (i) the terminal values utilized by J.P. Morgan; (ii) the inputs and assumptions underlying the discount rates and terminal growth rates utilized by J.P. Morgan; and (iii) the net debt,

redeemable noncontrolling interests, unfunded pension liability, equity investments, and fully diluted shares utilized by J.P. Morgan.

33. Regarding Greenhill's Discounted Cash Flow Analysis, the Proxy fails to disclose: (i) the terminal values utilized by Greenhill; (ii) the inputs and assumptions underlying the discount rates and multiples utilized by Greenhill; and (iii) the net debt, redeemable noncontrolling interests, unfunded pension liability, equity investments, and fully diluted shares utilized by Greenhill.

34. Regarding Greenhill's Present Value of Future Share Price analysis, the Proxy fails to disclose the inputs and assumptions underlying discount rate and multiples utilized by Greenhill.

35. Regarding Greenhill's Precedent Premiums Paid analysis, the Proxy fails to disclose: (i) the transactions utilized by Greenhill; and (ii) the premiums paid in the transactions utilized by Greenhill.

36. Regarding Greenhill's Equity Research Analyst Price Targets analysis, the Proxy fails to disclose: (i) the price targets utilized by Greenhill; and (ii) the sources of the price targets utilized by Greenhill.

## COUNT I

**Claim Against the Individual Defendants and TEGNA for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

37. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

38. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

39. TEGNA is liable as the issuer of these statements.

40. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

41. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

42. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

43. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

44. The Proxy is an essential link in causing plaintiff to approve the Proposed Merger.

45. Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

46. Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

47. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of TEGNA within the meaning of Section 20(a) of the Exchange Act as alleged herein.

49. Due to their positions as officers and/or directors of TEGNA and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control,

8

directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

51. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

52. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in the making of the Proxy.

53. Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

54. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

55. These defendants are liable pursuant to Section 20(a) of the Exchange Act.

56. Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B.  In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C.  Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E.  Awarding plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated: March 31, 2022

**GRABAR LAW OFFICE**

By: *[signature]*

Joshua H. Grabar (#82525)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

*Counsel for Plaintiff*